Opinion filed October 23, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed October 23,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                     Nos. 11-07-00302-CR, 11-07-00303-CR, &
11-07-00304-CR

                                                    __________

 

                                ROBERT LEE HIGHLAND, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 415th District Court

 

                                                          Parker
County, Texas

 

                       Trial
Court Cause Nos. CR06-0605, CR06-0606, CR06-0607

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

The
trial court convicted Robert Lee Highland, upon his pleas of guilty, of three
offenses of  aggravated sexual assault of a child.  The jury assessed his
punishment at confinement for life for each offense.  We affirm.

                                                              I.
Background Facts








The
State alleged that on three separate occasions Highland engaged in a number of
sexual acts with a female victim who was younger than fourteen years of age. 
After jury selection and before the start of the evidence, the trial court
discussed with counsel evidence the State anticipated it would offer.  The
State advised the court that, during the execution of a search warrant, a shoe
box full of VHS and eight-millimeter tapes depicting child pornography and
involving Highland and the victim were found.  The State indicated its intent
to offer the tapes into evidence and to play a five- minute clip of material
from these tapes for the jury.  Highland responded that he would object to the
video because of improper authentication, because any probative value would be
outweighed by its unfair prejudice, and because it was cumulative.  The State
argued that the material was admissible to show the jury the nature of the
offense itself and because possession of child pornography is an extraneous
offense.  The trial court asked both sides clarification questions, and
Highland advised the court that he was not objecting to the entirety of the
State=s video offer
but only to the clip the State intended to play for the jury because it
violated Tex. R. Evid. 901.  The
State also indicated its intent to offer a photo album with Polaroid pictures
taken by Highland and 350 CDs.  Highland stated that his only objection to
these was to any picture of himself and the victim. Highland contended that the
State was required to authenticate them with evidence that they were, in fact,
pictures of the victim.  The trial court deferred any ruling on admissibility
of the evidence until trial.

The
State=s first witness
was Special Agent Lori A. Keefer with the Federal Bureau of Investigation. 
Agent Keefer testified that her responsibilities included child pornography
cases and crimes against children.  Agent Keefer testified that the FBI and
Immigrations and Customs Enforcement Agency suspected Highland was purchasing
child pornography.  The FBI obtained a search warrant for Highland=s home.  Agent Keefer
executed the warrant when Highland was home. He admitted to her that he
possessed child pornography.  During the search, Agent Keefer found two photo
albums with Polaroid pictures in a safe in Highland=s bedroom closet.

When
the State offered the two photo albums into evidence, Highland requested the
opportunity to voir dire Agent Keefer.  On voir dire, Agent Keefer testified
that she believed Highland had taken the pictures but agreed that she had no
personal knowledge of this.  Highland=s
voir dire examination then continued:

Q.        Okay. 
And do you know when these photos were taken?

 








A.        I
know from my identification of the victim and by interviews that I=ve conducted, actually,
with Mr. Highland=s
daughter, with the victim, and with the victim=s
family members, of what her age is in the photo albums.

 

Q.        Right. 
So based on that, you know or you were able to identify who was in these
pictures based on what somebody told you; is that right?

 

A.        Well,
actually, the day of the search warrant when we found the photos B when we found the two
photo albums, my initial thought was that it was two different girls that were
depicted in the photos, and I thought that it could possibly have been his two
daughters.  His daughter . . . ended up arriving at the residence that day and
I showed her the photographs and she identified A.C. as being the girl depicted
in the photos.  And I later found A.C. and showed her the photographs, and she
identified herself as being who is depicted in the photos.

 

Q.        Right,
all of which you had no personal knowledge of.  They were identified by other
people or what people told you?

 

A.        Correct.

 

Highland then
objected to the admission of the photo albums, contending that the proper
predicate had not been laid because Agent Keefer had no personal knowledge
concerning the photographs.  The trial court overruled Highland=s objection and admitted
the photo albums.  Highland then asked for, and received, permission to lodge
an additional objection to the admission of the photographs.  Highland objected
to the photographs because their probative value was substantially outweighed
by the danger of unfair prejudice, because the photographs were cumulative, and
because Ait=s [a] violation of the
Sixth Amendment right to confrontation as well as violation of Crawford.@[1] 
The trial court responded that its ruling would stand.

The
State continued its examination of Agent Keefer.  She testified that, in some
of the videos taken from Highland=s
house, A.C. appeared to be Abasically
passed out.@  The
State then asked Agent Keefer:

Q.        Did
you take the opportunity to see how passed out she was or how unconscious she
was?

 








A.        Yes. 
We were very concerned because during some of the sex acts, the victim is
totally unresponsive and we suspected that she was given something and we didn=t know what she might have
been given.  I have a coworker who was a former nurse, and she counted the
number of breaths A.C. took during a sequence in the video.  And she=s barely taking nine to
twelve breaths a minute which she said is borderline unresponsive.  But in
talking to witnesses in the case B


 

Highland
objected to this testimony as hearsay.  The trial court overruled the
objection.  Following the completion of the evidence, the jury assessed
Highland=s punishment
at confinement for life for each indictment.

                                                                        II.
Issue

 Highland
challenges his sentence with a single issue contending the trial court abused
its discretion by overruling his objections to Agent Keefer=s testimony.

                                                            III.
Standard of Review

 We
review the trial court=s
admission of evidence under an abuse of discretion standard. Weatherred v.
State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  A trial court does not
abuse its discretion if its ruling is within the zone of reasonable
disagreement.  Id.  We will uphold a trial court=s evidentiary ruling if it is reasonably
supported by the record and is correct under any theory of applicable law.  Martin
v. State, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).  If evidence is
admitted in error, we must then conduct a harmless error analysis.  Tex. R. App. P. 44.2.

                                                                   IV.
Discussion

Although
presented in a single issue, Highland=s
appeal implicates two decisions by the trial court.  We will address these
decisions separately, starting first with the trial court=s decision to overrule Highland=s objection to testimony
that the victim appeared unresponsive in some of the videos.  The only
objection Highland made to this testimony at trial and thus the only issue we
will consider on appeal is whether this testimony was hearsay.








Agent
Keefer=s testimony
that the victim appeared unresponsive during some of the sex acts is not
hearsay because it was her personal observation after watching the videos, but
her testimony that a coworker said the victim was borderline unresponsive
because she was taking only nine to twelve breaths a minute is hearsay.  See
Tex. R. Evid. 801(d).  This
is nonconstitutional error and, thus, must be disregarded unless it affected Highland=s substantial rights.  Rule
44.2(b).  We find that it did not.

The
jury knew that Highland had pleaded guilty to three indictments alleging
aggravated sexual assault.  Each indictment alleged multiple acts of sexual
assault by Highland against the victim.  Agent Keefer=s testimony advised the jury that on some
occasions the victim was borderline unresponsive and, thus, added the
allegation that Highland also drugged the victim.  After Agent Keefer
testified, the State called the victim=s
younger sister as a witness.  She testified without objection that she and her
sister spent considerable time with Highland=s
daughter at his house and that he frequently provided them with alcohol.  At
the time, she was seven to nine years old, and her sister was eight to ten
years old.  She testified that Highland would purchase two six-packs of wine
coolers and that she and Highland=s
daughter would drink one and the victim would drink the other by herself.  This
resulted in her sister getting  Amore
drunk than what she should have been.@ 
This testimony rendered any prior error harmless.

We
next consider Agent Keefer=s
voir dire testimony.  Highland=s
brief characterizes his trial objection as an objection to Agent Keefer=s testimony, but the
transcript reveals that he was actually objecting to the admission of the photo
albums.  Agent Keefer=s
testimony that Highland=s
daughter and A.C. identified themselves in the photographs was hearsay;
however, Highland did not object in response to this testimony.  He instead
asked an additional question to confirm that Agent Keefer had no personal
knowledge of the identity of the people in the photographs and then,
consistently with the position he articulated prior to the start of the
evidence, objected because Athe
proper predicate [had] not been laid with respect to these photo albums.@  When that objection was
overruled, he asked for permission to Alodge
another objection to the admittance of these video -- of these photographs in
addition to my previous objection under Rule 901.@ 
Highland=s trial
objection to the photo albums did not preserve the objection to Agent Keefer=s prior testimony that he
raises in his brief.








Regardless,
any error would be harmless.  Agent Keefer=s
testimony established the extraneous offense of possession of child pornography
B an allegation
Highland does not contest.  Highland admitted to Agent Keefer that he had child
pornography when she executed the search warrant.  In addition to the two photo
albums, the State=s
evidence included eighteen videotapes, over 300 computer disks (containing
100,000 to 125,000 child pornography images), seven floppy disks, and a variety
of other child-pornography related material.  Each of these exhibits was introduced
without objection.  In light of this overwhelming evidence of possession, any
evidence of the identity of the subjects would not affect Highland=s substantial rights.

The
fact that Agent Keefer testified that she knew the identity of the subjects in
the photo albums from her conversations with the victim and Highland=s daughter does not alter
the analysis.  Other testimony establishing that Highland=s child pornography
collection included pictures of the victim and Highland=s daughter was introduced without objection. 
Agent Keefer testified that she met with both the victim and Highland=s daughter during her
investigation.  She also testified that she viewed the VHS tapes and
eight-millimeter tapes found in Highland=s
closet.  Agent Keefer testified that Highland appeared on some of the tapes and
that both the victim and Highland=s
daughter could be seen on some of them.  During trial, Highland=s daughter was shown a
portion of one of the videos and confirmed that it depicted herself and the
victim.  Because this testimony and evidence came in without objection, there
was no harm in admitting Agent Keefer=s
description of her conversations with the victim and Highland=s daughter.  Highland=s issue is overruled.

                                                                     V.
Holding

The
judgments of the trial court are affirmed.

 

 

RICK STRANGE

JUSTICE

 

October 23, 2008

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









     [1]Crawford v.
Washington, 541 U.S. 36 (2004).